The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jan N. Pittman. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATION
All stipulations contained in the aforementioned Pre-Trial Agreement are incorporated herein by reference. Furthermore, the parties stipulated to the medical records of Dr. Shields received into evidence following the hearing as Stipulated Exhibit 1.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 39-year-old male who at the time of his admittedly compensable injury was employed by defendant-employer as a worker in defendant-employer's cloth printing plant. Plaintiff worked as a grey-tender which involved tending a cloth printing machine.
2. The cloth printer has rollers which weigh approximately 200 pounds that must be changed, then lifted into place. Normally four men are required to do this task; however, on September 15, 1992, defendant-employer required plaintiff and another co-worker to "change the rollers." During this process, the plaintiff lifted a roller overhead while one foot was on the machinery frame and the other on an adjacent ladder. The ladder was of the type that could be rolled from place to place and the wheels had not been locked. While lifting the 200 pound roller, the ladder moved and plaintiff experienced an immediate pain in the left side of his low back and also a pain in his left knee. Plaintiff timely reported this injury to his supervisor and defendant-employer accepted as compensable plaintiff's claim regarding his back injury.
3. Plaintiff continued on the job for the remainder of his shift and continued to work until September 23, 1992 when he reported to the emergency room at Pardee Hospital because of increased pain and muscle spasm. Following an examination by Dr. Brown, plaintiff was referred for orthopaedic evaluation to Dr. Eaton.
4. On September 29, 1992, plaintiff was examined by Dr. Eaton whose impression was that plaintiff suffered from sciatic neuritis. Dr. Eaton noted that plaintiff favored his left foot and reported that he had numbness and pain in his left lower extremity. Plaintiff was scheduled for a CAT-scan of the lumbar spine on October 1, 1992.
5. On October 5, 1992 plaintiff returned to Dr. Eaton who referred plaintiff for therapy at Park Ridge Hospital. Dr. Eaton reviewed plaintiff's lumbar CAT-scan which showed a mild disc bulge at the L4-5 level, but no evidence of an extruded disc fragment. Impression remained left lower sciatica and back pain.
6. On November 19, 1992 plaintiff was referred by defendants to Dr. Guthrie, another orthopedist, for evaluation. Dr. Guthrie noted plaintiff continued to experience pain in his left knee, described as retropatellar pain and popping, left lower sacroiliac pain and paralumbar pain radiating down the buttock postlaterally to the thigh and knee. Dr. Guthrie also noticed crepitus behind the left knee cap and upon straight leg raising found it to cause medial joint line pain, which pain occurred sometimes with ambulation but very often at rest. Dr. Guthrie's assessment was: left sacroiliac joint sprain; a bulging disc at L4-5; and a left knee sprain with possible medial meniscus tear. Following this examination, plaintiff was released to resume light duty work on March 2, 1993 with restrictions of no stooping, bending, two and one-half pound lifting limit and no squatting. Plaintiff was to be allowed to sit, stand or recline as needed with a further prescription of a back support at work. On March 11, 1993, Dr. Guthrie prescribed Flexeril for complaints of back spasm and Lorcet for pain noting that the plaintiff continued to work on a concrete floor all day. Furthermore, he prescribed shoe inserts to alleviate the effects of the concrete floor. Dr. Guthrie permitted plaintiff to continue on a light-duty basis as tolerated, but with the same restrictions as previously imposed.
7. On March 25, 1993, pursuant to an Order of the Industrial Commission, plaintiff resumed his care with Dr. Eaton. Due to plaintiff's continuing complaints, Dr. Eaton and Dr. Guthrie recommended that plaintiff be evaluated by Dr. Shields, a rehabilitation specialist. Dr. Shields saw plaintiff on April 2, 1993 and recommended that he complete a rehabilitation program. Dr. Shields noted that the plaintiff suffered from pain radiating from L4-5 level of his lower back and that he continued to have pain in his left knee. Plaintiff was also referred for further diagnostic work-up to Dr. Chapman in Charlotte.
8. Dr. Chapman examined plaintiff on May 5, 1993 and following his examination, Dr. Chapman released plaintiff for work as of May 10, 1993 with the restrictions of lifting no greater than 25 pounds or working more than two hours initially and then gradually increasing the work day to eight hours and the lifting to 75 pounds within an eight week period.
9. Plaintiff returned to work under the restrictions as imposed by Dr. Chapman and Dr. Eaton on May 10, 1993. Following said return to work, plaintiff gradually increased his work day to eight hours.
10. Following a scheduled lay-off of the entire work force at defendant-employer's plant during the first two weeks of July, plaintiff returned to see Dr. Eaton on July 16, 1993. At this appointment plaintiff informed Dr. Eaton that a job of rotary helper was being offered by defendant-employer. Dr. Eaton agreed plaintiff was progressing and might return to employment as a rotary helper with the restrictions of no squatting or lifting more than 30 pounds while bent over. Dr. Eaton also discussed with plaintiff his left knee problem. This left knee condition for which plaintiff had essentially been treated by Dr. Guthrie arose from the incident of September 15, 1992. The fact that the ladder rolled while plaintiff was lifting the roller constituted an unusual occurrence which interrupted plaintiff's regular work routine resulting not only in plaintiff's back strain but in an injury to plaintiff's left knee. Surgery has been recommended for this knee condition; however, plaintiff's request for this surgery has been denied.
11. Plaintiff resumed work as a rotary helper on the second shift; however, while performing this job, plaintiff experienced an exacerbation of his back condition while attempting to move a glue box from a machine. Plaintiff continued to work; however, until August 5, 1993 when he sought medical treatment in the emergency room at Pardee Hospital for complaints of back spasm.
12. When seen on August 12, 1993, Dr. Eaton increased plaintiff's restrictions releasing him to full-time, light-duty employment of eight hours a day where plaintiff would not be required to stand or walk greater than one to two hours each day, sit for greater than half-hour intervals for a total of three hours per day and engage in frequent lifting greater than 10 percent of the work day. Furthermore, plaintiff was restricted to occasional bending at no greater than a 45 degree angle, could only occasionally reach and twist and should avoid squatting, kneeling and crawling. As these restrictions set forth by Dr. Eaton on August 12, 1993 were deemed permanent, the undersigned finds that as of August 12, 1993 plaintiff had reached maximum medical improvement. As a result of these restrictions on plaintiff's capacity, plaintiff has sustained a 5 percent permanent partial disability to his back and a 5 percent permanent partial disability to his left leg.
13. Also due to a reduction in defendant-employer's work force, plaintiff was bumped in August 1993 from the second shift position of rotary helper. While there existed a third shift position as a grey-tender, plaintiff's regular job, this position was not within plaintiff's work restrictions. However, defendant-employer did contact plaintiff in August 1993 and again offered plaintiff a light-duty position as a rag-sorter. However, Plaintiff refused to accept the offered job of rag sorting and folding and informed defendant-employer that he was frustrated with said employment situation and that he quit. Defendant-employer considered plaintiff's refusal to accept the position of rag-sorter as a voluntary termination of plaintiff's employment.
14. The job of rag sorting and folding is a light-duty job designed by defendant-employer to allow employees with restrictions who cannot perform their regular job duties to return to the work force. The position is modified as necessary according to the doctor's restrictions. While the position was modified to comply with the restrictions placed upon plaintiff and allowed plaintiff the option to sit or stand as needed, and modified to provide that the material was placed on the table so that plaintiff would not be required to engage in frequent bending; nevertheless, this position did not pay the same wages plaintiff was earning in his previous employment and although plaintiff earned some wages in this position as said position was tailored to accommodate plaintiff's special needs and is not generally available in the job market, it was not indicative of plaintiff's ability to earn wages.
15. Since reaching maximum medical improvement, plaintiff retains a substantial loss of his earning capacity and defendants have failed to show that there are jobs available which plaintiff could reasonably obtain if he sought employment when considering plaintiff's physical and vocational abilities.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On September 15, 1992 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer which resulted in a low back injury and a left knee injury. G.S. § 97-2 (6).
2. Plaintiff's refusal to accept the job offered him by defendant-employer on August 17, 1993 was justifiable.
G.S. § 97-32.
3. Plaintiff is entitled to continuing temporary total disability compensation benefits at the rate of $274.15 per week since August 15, 1993 and continuing subject to a change in condition, return to work or further Order of the Industrial Commission. G.S. § 97-29.
4. Plaintiff is entitled to have defendants provide all medical treatment arising from his injury by accident including the recommended knee surgery to the extent said treatment tends to effect a cure, give relief or lessen plaintiff's disability. G.S. § 97-25.
5. This claim was not defended without reasonable grounds. G.S. § 97-88.1.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay temporary total disability compensation benefits to plaintiff at the rate of $274.15 per week beginning August 15, 1993 and continuing subject to a change of condition, return to work or further Order of the Industrial Commission and subject to the attorney's fee hereinafter approved.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of said injury by accident.
3. An attorney's fee in the amount of 25 percent of the compensation awarded herein is hereby approved for plaintiff's counsel which shall be deducted from the aforesaid accrued benefits due plaintiff and defendants shall thereafter forward every fourth check of compensation benefits due plaintiff to counsel for plaintiff as long as plaintiff is receiving said compensation benefits.
4. As this claim was not defended without reasonable cause, plaintiff's motion that defendants pay plaintiff's counsel fee is hereby denied.
5. Defendants shall pay an expert witness fee in the amount of $250.00 to Dr. Eaton.
6. Defendants shall pay the costs.
FOR THE FULL COMMISSION
 S/ _________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ _________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _________________ LAURA K. MAVRETIC COMMISSIONER
CMV/cnp/mj 9/13/95